UNITED STATES ex rel. Harold WALK-
ER et al., Plaintiffs-Appellants,

v.

Vincent R. MANCUSI, Superintendent,
Attica Correctional Facility,
Defendant-Appellee.

No. 870, Docket 72–1081.

United States Court of Appeals,
Second Circuit.

Argued Aug. 15, 1972.

Decided Sept. 20, 1972.

Harold Walker, pro se, for plaintiffs-appellants.

John H. Stenger, Sp. Asst. Atty. Gen., Buffalo, N. Y. (Louis J. Lefkowitz, Atty. Gen., State of N. Y., New York City, of counsel), for defendant-appellee.

Before MANSFIELD and TIMBERS, Circuit Judges, and GURFEIN, District Judge.*

MANSFIELD, Circuit Judge:

Appellants are inmates of the Attica Correctional Facility who have been segregated from the general inmate population of that prison in a special housing unit known as "A Block, 6 Company." In a class suit brought pursuant to 42 U.S.C. § 1983 they contend that the segregation violates their Eighth and Fourteenth Amendment rights. Invoking the district court's jurisdiction under 28 U.S.C. §§ 1331, 1343, 1361, 2201 and 26 U.S.C. § 7402, they have sought declaratory, injunctive and mandamus relief directed toward securing their release into the general prison population.[1]

Following a hearing in which Walter Dunbar, Executive Deputy Commissioner of the New York State Department of Correctional Services, testified, Judge Curtin, 338 F.Supp. 311, denied appellants' application for an order returning them to the general prison population but retained jurisdiction for the purpose, among others, of insuring that appellants' due process rights would be protected through utilization of procedures prescribed by written Rules that had been published and put into effect by the De-

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Although appellants' handwritten application to us is entitled "Notice of Motion," we treat it as a Notice of Appeal from denial of preliminary injunctive relief, over which we assume jurisdiction pursuant to 28 U.S.C. § 1292(a).

When this action was instituted there were approximately 30 inmates in "A Block, 6 Company." Since that time the number has been reduced to 14 as a result of releases or transfers to other institutions. Upon oral argument it appeared that each of the remaining 14 had refused an offer to be transferred to other New York State institutions where they would be eligible for membership in the general prison population.

partment of Correctional Services.[2] We affirm.

■ Appellants contend that their restrictive confinement constitutes cruel and unusual punishment, imposed without evidentiary justification. Unquestionably they are substantially deprived of many privileges extended to the general prison population. Except for a short exercise period each day, they are confined to their cells. However they are given access to showers, newspapers, magazines, radio earphones and are furnished in their cells the same food as that served in the main dining room to the general inmate population. They have commissary privileges, may receive packages from the outside, receive the minimum hourly wage paid to inmates, and suffer no loss of "good time." Such segregated confinement does not approximate the barbarous conditions or mistreatment that have been condemned as violative of the Eighth Amendment, Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 23 (2d Cir. 1971), and it falls short of conditions found permissible in Sostre v. McGinnis, 442 F.2d 178, 191–192 (2d Cir. 1971), cert. denied sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) (solitary confinement, restricted diet, denial of magazines or newspapers, and loss of "good time"). We therefore find no merit in appellants' Eighth Amendment claims.

■ Turning to appellants' claims of denial of equal protection, the State contends that it was necessary to segregate appellants, not only for their own protection but for that of the general inmate population. The existence of evidence indicating that they were active participants in the bloody riots of September 9–13, 1971, at Attica who might, if released to the general prison population, be attacked by other prisoners or themselves threaten the security of the institution provides adequate grounds for their physical segregation and thus overcomes any equal protection claim.

Appellants' due process claim is equally meritless. In accordance with the district court's decision handed down on December 21, 1971, the Superintendent of Attica prison and his staff initiated adjustment committee proceedings for each of the inmates confined in "A Block, 6 Company," applying the Rules of the New York Department of Correctional Services for Admission to Special Housing Units. The Superintendent reviewed each case, informed each inmate of the evidence against him, and gave him the opportunity to consent to continued restrictive confinement or to reply to the evidence against him. Substantial evidence of good cause for continued segregated confinement was found as to all except four prisoners who were released to the general population. The Superintendent was required to furnish a copy of his findings to each inmate concerned, who, if he disagreed, was entitled to review by the Commissioner of Correctional Services.

■ Prison authorities must of necessity be allowed wide discretion in the use of protective confinement for the purpose of protecting the safety and security of the prison and its general population, see Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Sostre v. McGinnis, 442 F.2d at 192. Having in mind that due process is neither a technical nor an inflexible concept, Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), and that what constitutes due process will vary according to the circumstances encountered, Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), we are satisfied that the procedures followed by the Attica authorities with respect to those held in protective confinement in this case, while not as precise or detailed as might

---

2. Rules for Admission to Special Housing Units, New York State Department of Correctional Services, § 304.

be required under other conditions, were sufficient to satisfy minimum requirements of "fair play." See Sostre v. McGinnis, 442 F.2d at 196.

The order is affirmed.