**518**

Robert E. L. MASON, #71045,
Plaintiff,

v.

Otis L. BROWN et al., Defendants.

Civ. A. No. 446-71-R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 2, 1973.

James Edward Sheffield, Richmond, Va., for plaintiff.

William A. Carter, III, Asst. Atty. Gen., for defendants.

## MEMORANDUM

RICHARD E. ROBINSON, Senior District Judge.

This matter came on for trial before the Court pursuant to the mandate of the Court of Appeals [Me.Order No. 71-2087, June 20, 1972]. [The defendant had filed a motion for summary judgment just prior to the trial, but this action was presented to the Court as a trial on the merits of the case and the Court renders its decision accordingly].

The following shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52.

The plaintiff, Robert Mason, was, at the time of the trial and commencement of this action, an inmate in the Virginia Penal System. Counsel was appointed to represent the plaintiff. This action is construed to be brought pursuant to 42 U.S.C. § 1983 and jurisdiction is attained by virtue of 28 U.S.C. § 1343. There is no statutory provision for payment of counsel fee in this action and counsel is to be commended for the presentation of this matter to the Court.

The plaintiff makes two claims: [1] that he was placed in a maximum security status as a punitive measure arbitrarily decided upon by a prison committee without reason or justification, and [2] that the defendants failed to take rea-

sonable and proper precautions to safeguard the plaintiff's property when the plaintiff was hospitalized as a result of a stab wound.

■ The Court finds that on or about February 9th, 1971, the plaintiff was transferred from the general prison population of the Virginia State Penitentiary to the maximum security unit and within that unit was placed in a padlocked cell, and thus completely isolated from other prisoners. [C-Cell Maximum Security Status]. The decision to place the plaintiff in the C-Cell maximum security status was made by a prison classification committee after the plaintiff appeared before the committee. The plaintiff had precipitated this appearance by requesting to be placed in "detention" [which would result in a lesser degree of segregation from the general prison population] and by requesting a conference with certain prison officials.

The plaintiff, however, has failed to fulfill his burden of proof and has not presented sufficient evidence which would establish that the placement of the plaintiff in maximum security status was arbitrary or punitive in nature. On the contrary the defendant has established by a preponderance of the credible evidence that the assignment of the plaintiff to the maximum security status was for his protection as well as that of the other prison population.

The prison psychologist was present 'at the meeting of the committee and observed the plaintiff, who at that time exhibited unusual behavior. The prison authorities were familiar with the plaintiff's reputation for becoming involved in assaults. It was stated that they had observed an improvement in the plaintiff's adjustment in recent years, but were still apprehensive about attacks on the plaintiff from other inmates.

The Court finds that there was ample and proper reason for authorities to conclude that an attack or assault was likely to be perpetrated upon the plaintiff. The Court does not find that the decision to place the plaintiff in maximum security was arbitrary or intended to punish the plaintiff, and there has been no proper showing of a constitutional deprivation.

■ This Court is without jurisdiction to review routine administrative decisions absent a proper showing of a constitutional deprivation. Ferrell v. Huffman, 350 F.Supp. 164 [E.D.Va. 1972]; McCloskey v. Maryland, 337 F.2d 72 [4th Cir. 1964].

The wisdom of this rule is especially apparent in this action. Prison authorities necessarily must make judgments regarding human behavior and this is an area that cannot be reduced to mathematical certainty.

■ Moreover, as stated in Penn v. Oliver, 351 F.Supp. 1292 [E.D.Va.1972]

"This Court has no doubt that the eighth amendment's prohibition against cruel and unusual punishment places a responsibility upon prison officials to protect the prison inmates within the prison system from violent assaults by other inmates."

In light of the responsibility placed upon the prison authorities it would be patently inconsistent to shackle prison authorities with a rigid and unrealistic standard as to when and how inmates are to be protected. It is equally clear that in order to afford an inmate protection from assaults or attacks prison authorities must be granted some degree of discretion.

■ The Court also finds that the plaintiff has completely failed to fulfill his burden of proof with regard to the issue of whether reasonable and proper precautions were taken to safeguard the plaintiff's property. It is not the plaintiff's contention that the prison authorities are withholding his property, but that other inmates wrongfully took his property and that the authorities could have taken precautions to prevent this.

The plaintiff was transferred from the Virginia State Penitentiary and received at the Virginia State Farm, on or about April 22nd, 1971. On May 12th, 1971, the plaintiff was assaulted and received a stab wound to the neck by an-

other inmate just after leaving his cell. After the plaintiff had left the cell it was relocked. Lt. Tate, the guard on duty, first intervened and stopped the assault and then provided first aid, and accompanied the plaintiff to the dispensary who was then taken to a hospital. Lt. Tate then returned to the security building and instructed some inmates to pack the plaintiff's personal belongings. These items were then secured for safekeeping. Upon later receiving a letter from the plaintiff, Lt. Tate investigated but could not determine where any of the missing items were located or who was responsible for the loss of these items.

The Court finds that reasonable precautions were made to safeguard the property and that reasonable efforts have been made to retrieve the missing property, and that there is no proper basis to attribute any negligence to any defendant.

A separate order consistent with this Memorandum will be entered dismissing this action on the merits.